UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**FREDERICK M. FALCO,**

    **Plaintiff,**

v.                                            Case No.  8:06-cv-2088-T-23TBM

**MICHAEL J. ASTRUE,**
**Commissioner of the United States**
**Social Security Administration,**

    **Defendant.**
_____/

**O R D E R**

The Plaintiff seeks judicial review of the denial of his claim for Social Security disability benefits.  For the reasons set out herein, the decision is affirmed.

I.

Plaintiff was fifty years of age at the time of his administrative hearing in August 2005.  He stands 5', 6" tall and weighed 147 pounds.  Plaintiff has an associate's degree in computer programming and applications.  His past relevant work was as a service manager, self-employed air conditioning and appliance repair, and air conditioner unit sales representative. Plaintiff applied for disability benefits in April 2003 (protective filing date), alleging disability as of February 1, 2002, by reason of lumbar fusion surgery, pain and

numbness in the lower extremities, and depression. The Plaintiff's application was denied originally and on reconsideration.

The Plaintiff, at his request, then received a *de novo* hearing before an Administrative Law Judge ("ALJ"). The Plaintiff was represented at the hearing by counsel and testified in his own behalf. Additionally, Plaintiff called two witnesses and a vocational expert was called by the ALJ.

In essence, Plaintiff testified that he became disabled after injuring his back on February 1, 2002. In August 2002, Plaintiff underwent back surgery, a laminectomy and fusion, and he suffered from an infection post-surgery. According to Plaintiff, he underwent two more back surgeries related to the infection, which resulted numbness in his hands and feet and a burning sensation that are permanent and without relief from drugs. Plaintiff stated that his condition was worse after the surgeries. He goes to the Veterans' Administration ("VA") hospital for pain management, and although the medication relieves the pain, it makes him dizzy and drowsy. Plaintiff testified that he is never without pain, and he stated that his back throbs, aches, and radiates. He described it as worse when he over-extends himself or does things like bending or lifting. Plaintiff also complained that he suffers from depression and difficulty with concentration.

Plaintiff indicated that on a typical day, he will take his morning medications and then lie back down within thirty minutes because of the dizziness and drowsiness. Sometimes he will lie in bed and watch television, and on some days he will sleep a total of twenty hours in a day. He estimates the he lies down four or five times a day, and the time lying down varies.

Plaintiff is able to sleep through the night on some nights, but he takes a sleeping pill approximately twice a week. Although one of his doctors recommended a spinal cord stimulator in his back, he did not receive that because it was not authorized by Workers' Compensation.

Plaintiff estimated that he can lift ten pounds, but he is not as strong as he once was and his back hurts if he tries to lift anything heavier. In response to questioning about his functional capacity evaluation, Plaintiff stated that he did the best he could and was unable to perform the lifting part of the evaluation because of pain and unsteadiness on his feet. He can walk to his mailbox and back, approximately 250 feet, and sit for about fifteen to twenty minutes. Plaintiff described himself as a formerly active person, an outdoors type who enjoyed fishing, swimming, and boating, but he is unable to do such things anymore. He is able to email and take care of financial matters online, but he indicates difficulty typing because of numbness in his hands. He can pick things up and grasp things, but he experiences a pins and needles sensation in his fingers when he presses down on something like a keyboard. He drops things once or twice a day. Plaintiff described himself as socially isolated. He drives very little, in part because of the drowsiness caused by his medication. (R. 38-54).

William Wanitshka testified in Plaintiff's behalf. Mr. Wanitshka testified that he resides with Plaintiff and takes care of the house and lawn, and does the grocery shopping because Plaintiff is unable to do any of that. The witness works, but when he is home, Plaintiff will come out for about ten minutes to sit and talk or eat dinner, and then he goes back to bed. On some days, Plaintiff does not get out of bed at all. (R. 55-57).

Barbara Falco, Plaintiff's ex-wife, also testified that when they were together, Plaintiff stayed in bed most days and lay down constantly. By her account, if he was not lying on the sofa, he would be lying in bed. According to Ms. Falco, there were times when Plaintiff would stay in bed for ten days at a time, when he would not get up and care for himself. She testified that he was socially isolated, was afraid to drive, and would not go to the store. By her account, there was very little he could do, and she cared for him and took care of the house and cooking. According to her, his pain medicine "zonked him out." (R. 57-60).

Teresa Manning, a vocational expert ("VE") testified upon an assumption of an individual of Plaintiff's age, education; and work experience; capable of performing a limited range of light work (that is, the ability to lift, carry, push, and pull twenty pounds occasionally and ten pounds frequently; and sit, stand, or walk six to eight hours in an eight-hour day); and occasionally climb, balance, stoop, crouch, kneel, and crawl. Upon this assumption, the VE opined that such individual could still perform the jobs Plaintiff performed as a service manager and sales representative. If such person also needed to alternate his activities every two hours, he could still perform such jobs. If such person were limited to sedentary work (that is, capable of lifting, carrying, pushing, and pulling ten pounds on occasion; sitting six to eight hours in an eight-hour day; and standing and walking for two hours in an eight-hour day), but no climbing ladders, ropes, or scaffolds; occasionally climbing stairs and ramps, balancing and stooping; but no crouching, kneeling, crawling and twisting, with the need to alternate his activities every two hours, such person could not perform Plaintiff's past work but could perform such sedentary unskilled jobs as security monitor, ticket checker, and bonder. Such

person, with Plaintiff's transferable skills, could also perform such semi-skilled jobs as telephone solicitor, circulation clerk, and order clerk. If secondary to problems with numbness in the hands, the individual could only use his hands for fine manipulation or feeling or writing one-third of the day, the semi-skilled jobs would be eliminated as would the bonder and ticket checker jobs. If secondary to the effects of medication and pain, such person was unable to sustain an eight-hour workday and forty-hour work week, then no such work would be available. Upon questioning from Plaintiff's counsel about such individual's ability to do Plaintiff's past work as a service manager and sales representative, if Plaintiff's testimony was credited concerning the need to stoop, crouch, and climb into attics as Plaintiff had to do, the VE clarified that she allowed for such activities up to three hours of a workday in her response. (R. 61-66).

Also before the ALJ were medical records outlining the Plaintiff's medical history. These matters are addressed adequately by the parties' memoranda and are set forth herein as necessary.

By her decision of November 23, 2005, the ALJ determined Plaintiff was disabled by reason of his lumbar disc disease status post laminectomy and fusion for the closed period from February 1, 2002, through February 17, 2003, but that Plaintiff's disability ceased on February 18, 2003, by reason of medical improvement. Thereafter, Plaintiff had the residual functional capacity to perform a wide range of light work. Upon this finding and the testimony of the VE, the ALJ concluded that Plaintiff could thereafter perform his past work as service manager

and sales representative. Upon this conclusion, the Plaintiff was determined to be not disabled. (R. 17-18). The Appeals Council denied Plaintiff's request for review.

## II.

In order to be entitled to Social Security disability benefits a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment," under the terms of the Act, is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* at § 423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See id.* at § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The Commissioner must apply the correct law and demonstrate that he has done so. While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. *Celebrezze v. O'Brient*, 323 F.2d 989 (5th Cir. 1963). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to re-weigh the evidence, but is limited to determining whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. *Miles*, 84 F.3d at 1400; *Bloodsworth v. Heckler*, 703 F.2d 1233 (11th Cir. 1983).

The scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988); *Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir. 1983).

### III.

The Plaintiff raises two claims on this appeal. As stated by the Plaintiff, they are as follows:

(1) The ALJ's finding that, as of February 18, 2003, the claimant underwent medical improvement, which was related to his ability to work is not supported by substantial evidence; and

(2) The ALJ's finding at Page 6, Paragraph 4, that the "claimant is not fully credible" is not supported in the record.

By his first claim, Plaintiff argues that the conclusion that he was medically improved such that he could perform the demands of work as of February 18, 2003, is unsupported and contrary to the medical record. After a careful review of the medical record and the functional capacity evaluation ("FCE") of February 17, 2003, I conclude that the findings of the ALJ in this regard are supported by substantial evidence.

As the decision reflects, the ALJ found Plaintiff disabled for a closed period dating from February 1, 2002 through February 17, 2003 by reason of his back injury and associated pain, surgery, recovery and complications involving infection. (R.14). However, on the basis of records from Plaintiff's surgeon and a pain management specialist and the conclusions of a disability examiner who performed the FCE, the ALJ concluded that by February 18, 2003, Plaintiff's condition had improved enough to allow him to perform light exertional work. Clearly, this was the uncontroverted conclusion set forth in the FCE. *See* (R. 200-07). Under the applicable standard, if the disability examiner's findings are associated with a demonstrated improvement in a claimant's medical condition, benefits were appropriately discontinued.[1]

---

[1]Case law and the Regulations require that before disability benefits can be terminated, there must be a determination that medical improvement has occurred and that the improvement is related to the claimant's ability to work. "Medical improvement" is "any decrease in the medical severity of . . . impairment(s) [that] was present at the time of the most recent favorable medical decision that [the claimant was] disabled or continued to be disabled." 20 C.F.R. § 404.1594(b)(1). A determination of medical improvement "must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with your impairment(s)." And, a medical improvement is only related to an individual's ability to work "if there has been a decrease in the severity . . . of the impairment(s) present at the time of the most recent favorable medical decision and an increase in your functional capacity to do basic

Here, a fair reading of Dr. Craig Bennett's records concerning the surgery reflected that Plaintiff underwent a successful transforaminal lumbar interbody fusion in August 2002 and thereafter Plaintiff reported relief from his pain. While there were post-surgery complications with infection and additional hospital care was necessary before the condition resolved, by January 2003, Dr. Bennett's notes reflect that Plaintiff was doing fairly well and healing appropriately. Care was conservative with medication and physical therapy. (R. 220). While the notes from February 2003, reflect Plaintiff complaints of pain and a little numbness in his leg, the x-ray evidence and physical examination by Barrett again revealed that Plaintiff was healing well and without significant problems. As a consequence, the doctor ordered a functional capacity evaluation and prescribed pain management. (R. 218-19). In June 2003, Dr. Bennett's physical examination again revealed positive findings suggesting improvement in Plaintiff's back despite Plaintiff's complaints of pain. Believing that Plaintiff was at maximum medical improvement, he was assessed to have a 13% permanent impairment rating by reason of his back injury. As for the FCE, the doctor stated, "[t]his FCE basically demonstrates that Mr. Falco can work at the light duty status. I would put him as having restrictions of no sitting more than two hours at a time, no standing more than two hours at a time, no excessive twisting or bending." (R. 217). In September 2003, Plaintiff was discharged from the doctor's care, with the doctor noting that Plaintiff was doing well from the radiographic standpoint but surgery had not done much for his pain. He added that Plaintiff was seeking disability and that "he is likely permanent and totally disabled." (R. 216).

---

work activities." 20 C.F.R. § 404.1594(b)(3).

9

Plaintiff was referred to Dr. M. Allam Reheem, M.D., for pain management in March 2003. Until a conclusory statement made in March 2005 that Plaintiff was "totally disabled," this doctor's treatment notes reflected generally good results from his care, all of which appears to have been rendered in 2003. He reported conservative care for complaints of back and leg pain, reported pain levels at 4 or 6 on a scale of 1 to 10, and Plaintiff's reports of partial relief from his epidural injections and medications. *See* (R. 240-47). From a functional standpoint, on Plaintiff's initial examination, Dr. Reheem noted decreased range of motion in the lumbar spine, but strengths were 5/5 and equal, sensory was intact, and there were no focal deficits. (R. 249). In the last treatment note dated October 14, 2003, the doctor indicated, "[r]easonably controlled back/leg pain settled WC claim, maintained on current med Rx. sleeping fair, functional." (R. 240). The only abnormal finding that date was for reduced range of motion in the lumbar spine. *Id.* None of the doctor's treatment notes suggested disabling functional impairments or limitations in connection with the pain complaints.

In light of this evidence, the ALJ could reasonably conclude that there had been improvement, that is, a decrease in the severity of Plaintiff's medical condition, if not Plaintiff's subjective complaints, and given the conclusions in the FCE, such improvement was related to Plaintiff's ability to work. Plaintiff is not entitled to relief on his first claim.[2]

Plaintiff next complains that the ALJ's credibility finding is unsupported by the record. In particular, Plaintiff asserts the ALJ failed to set forth inconsistencies in the record

---

[2]For the reasons set forth in his brief, I agree with the Commissioner that the ALJ appropriately discounted the opinions as to the ultimate issue of Plaintiff's disability rendered by Dr. Bennett on September 15, 2003, and Dr. Reheem on March 30, 2005. *See* (Doc. 14 at 11-12); *see also* 20 C.F.R. § 404.1527(e).

that permitted her to discount the subjective evidence. In this circuit, subjective complaints such as pain, fatigue or dizziness are governed by a three-part "pain standard" that applies when a claimant attempts to establish disability through subjective symptoms. By this standard, there must be evidence of an underlying medical condition and either objective medical evidence that confirms the severity of the alleged symptom arising from the condition or evidence that the objectively determined medical condition is of such severity that it can be reasonably expected to give rise to the alleged pain. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (citing *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986)). A claimant's subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability. *Id.*; *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987).

If the ALJ determines not to credit subjective testimony, he must articulate explicit and adequate reasons for his decision. *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995); *Jones v. Dep't of Health & Human Servs.*, 941 F.2d 1529, 1532 (11th Cir. 1991). The failure of the ALJ to articulate the reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true. *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988); *MacGregor v. Bowen*, 786 F.2d 1050, 1054 (11th Cir. 1986). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. *See Hale*, 831 F.2d at 1012.

Initially, it is apparent that the ALJ recognized and applied the applicable standard. *See* (R. 14). At least through February 17, 2003, the ALJ fully credited the Plaintiff's subjective complaints. In discounting the Plaintiff's subjective complaints thereafter, the ALJ

stated that the evidence as of February 18, 2003, "indicates the claimant improved significantly." (R. 16). In support of this conclusion, the ALJ cited findings by Dr. Reheem, Plaintiff's pain management provider, that Plaintiff's strength was 5/5 throughout and his sensation was intact. She noted further that Dr. Reheem described Plaintiff as "functional" and that he had reported some pain relief with treatment. The ALJ also cited later notes from the Plaintiff's pain care at the VA and noted that while they reflected continued complaints of pain, "specific findings were rarely noted" and the "evidence does not show that the claimant continued to have severely limiting symptoms as alleged."[3] *Id.* These findings must be read in light of the ALJ's review of the entire record, including in particular, that from Dr. Bennett as well as the FCE. The ALJ noted that he gave great weight to the FCE. Significantly, the disability examiner there reported that Plaintiff's validity profile of 46% indicated "an inconsistent and sub-maximum effort." (R. 200). He further stated that Plaintiff was considered to have a "moderate to high level of pain and occasional Symptom Magnification behavior." *Id*. The evaluator also noted that Plaintiff "is estimated to be able to perform at a level greater than that level demonstrated today." *Id.*

As noted above, under the applicable standard, an ALJ may discredit a claimant's subjective testimony on explicit and adequate findings. Here, I conclude that the ALJ has stated adequate grounds to discount the Plaintiff's subjective complaints to the extent set he

---

[3] Significantly, the VA records repeatedly indicate that Plaintiff denied dizziness, headache, weakness or numbness. *See e.g.* (R. 263, 267, 274). They nowhere indicate drowsiness as a side effect to any of the medications either. Similarly, the reports from Dr. Reheem (and Dr. Bennett) reflect no complaints by Plaintiff of dizziness or drowsiness.

claimed he was rendered wholly disabled even from light or sedentary exertional work by his symptoms. *See Allen v. Sullivan,* 880 F.2d 1200, 1203 (11th Cir. 1989).

Finally, Plaintiff makes a poorly articulated argument suggesting that the ALJ employed an inadequate or incorrect hypothetical. Case law in this circuit requires that the ALJ employ hypothetical questions which are accurate and supportable on the record and which include all limitations or restrictions of the particular claimant. *Pendley v. Heckler*, 767 F.2d 1561 (11th Cir. 1985). Where the hypothetical employed with the vocational expert does not fully assume all of a claimant's limitations, the decision of the ALJ, based significantly on the expert testimony, is unsupported by substantial evidence. *Id.* at 1562 (quoting *Brenem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980)). However, an ALJ need not include findings in a hypothetical that are not supported in the record or which have been properly rejected as unsupported. *Crawford v. Comm'r. of Soc. Sec.*, 363 F.3d 1155, 1160 (11th Cir.2004);

Presumably, "the hypothetical question appearing on pages 65 and 66" that meets Plaintiff's approval is the question assuming that the subject individual could not work a forty-hour work week, eight-hour work day. However, the decision reflects that the ALJ rejected such findings for the period after February 17, 2003, and Plaintiff makes no demonstration that the ALJ erred in such conclusion. For the reasons set forth above, I find the ALJ's findings in that regard to be supported by substantial evidence, and the ALJ was not required to adopt this testimony in the final decision. As for the "hypothetical questions propounded to the VE at pages 62 and 63," the record reveals that the ALJ considered the residual functional capacity assessments of two state non-examining doctors as well as the FCE as modified by Dr. Barrett in fashioning these questions. Contrary to Plaintiff's contention, one of the

hypothetical questions expressly referenced Dr. Bennett's report and assumed the need for only occasional twisting and the option for sitting, standing, or walking no more than two hours at a time. *See* (R. 63). Under this hypothetical, the VE opined that Plaintiff could still do his former work as a service manager and sales representative. Plaintiff's suggestion that such limitations were not presented to the VE is incorrect.[4] Upon my consideration, the ALJ gave full consideration to the Plaintiff's limitations, fairly included them in his hypothetical to the VE, and received testimony about jobs Plaintiff could still do. In the circumstances, the ALJ's conclusions are in accord with the standard and supported by the VE testimony.

IV.

For the foregoing reasons, the decision of the Commissioner of the United States Social Security Administration is in accordance with the correct legal standards and is otherwise supported by substantial evidence. The decision is affirmed. Accordingly, the Clerk is directed to enter Judgment in favor of the Defendant and to close the file.

**Done and Ordered** at Tampa, Florida, this 29th day of March 2008.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of record

---

[4] It is worth noting that Plaintiff's counsel represented Plaintiff at the hearing and was afforded a full and fair opportunity to question the VE. As the transcript reflects, he made no objections to the ALJ's questions nor any effort to expand upon or correct the ALJ's questions, and it is inappropriate for the Plaintiff to raise this issue for the first time on appeal. *See Alacare Home Health Servs., Inc. v. Sullivan,* 891 F.2d 850 (11th Cir.1990).